UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ACANTHA LLC,

   Plaintiff,

v.               Case No.  15-C-1257

DEPUY ORTHOPAEDICS INC, et al.,

   Defendants.

# DECISION AND ORDER

In this action for patent infringement, Plaintiff Acantha LLC accuses Defendants DePuy Synthes Sales, Inc., DePuy Synthes Products Inc., DePuy Synthes Inc., Johnson & Johnson Inc., Synthes Inc., Synthes USA LLC, DePuy Orthopaedics Inc., and DePuy Spine LLC of infringing its patent U.S. Reissued Patent No. RE43,008 (the '008 Patent). Currently pending before the court are Acantha's motion for judgment on the pleadings and motion to strike Defendants' invalidity contentions as well as Defendants' motion to reduce the number of Acantha's asserted claims and motion to compel. The court will address each motion in turn.

**A. Acantha's Motion for Judgment on the Pleadings**

On June 15, 2017, Defendants filed an amended answer and counterclaim asserting numerous affirmative defenses and three counterclaims. Among the affirmative defenses Defendants asserted in their amended answer is an allegation that the '008 Patent is unenforceable because Acantha engaged in inequitable conduct before the United States Patent and Trademark Office (USPTO) in its application for re-issuance of Patent No. 6,261,291 (the '291 Patent) that preceded it. Am. Compl., Aff. Def. ¶ 11, ECF No. 84. Count Three of Defendants' counterclaims against Acantha

seeks a declaration that the '008 Patent is invalid based on the same allegations of inequitable conduct. *Id.* at 19. Acantha has filed a motion seeking partial judgment on the pleadings, or alternatively, a motion to strike. ECF No. 91. Acantha contends that Defendants' allegations regarding its inequitable conduct defense are insufficient to support that defense and respective counterclaim for declaratory relief as a matter of law.

Rule 12(c) of the Federal Rules of Civil Procedure permits a party to seek judgment on the pleadings after the pleadings have been closed. *Buchanan–Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). Courts apply the same standard in deciding a motion for judgment on the pleadings as they do in deciding a motion to dismiss. *Landmark Am. Ins. Co. v. Hilger*, 838 F.3d 821, 824 (7th Cir. 2016). The facts are viewed in the light most favorable to the non-movant. *Id.* To survive a motion to dismiss or for judgment on the pleadings, the challenged pleading must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2009)).

"Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011). To satisfy the elements of inequitable conduct at the pleadings stage, a defendant must allege that the patent applicant "(1) made an affirmative misrepresentation of fact, submitted false material information, or failed to disclose material information; and (2) intended to deceive the PTO." *CIVIX-DDI, LLC v. Hotels.com, L.P.*, 711 F. Supp. 2d 839, 843 (N.D. Ill. 2010) (citing *Rentrop v. Spectranetics Corp.*, 550 F.3d 1112, 1119 (Fed. Cir. 2008); *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1314 (Fed. Cir. 2008)). That is, a patent applicant engages in inequitable conduct

2

if he "misrepresented or omitted *material* information with the specific *intent* to deceive the PTO." *Therasense*, 649 F.3d at 1287 (emphasis added).

Allegations of inequitable conduct must be pled with particularity in accordance with Rule 9(b) of the Federal Rules of Civil Procedure. *See Exergen Corp. v. Wal–Mart Stores, Inc.*, 575 F.3d 1312, 1326–27 (Fed. Cir. 2009) (noting that a "pleading that simply avers the substantive elements of inequitable conduct, without setting forth the particularized factual bases for the allegation, does not satisfy Rule 9(b)"); *Cent. Admixture Pharm. Servs., Inc. v. Advanced Cardiac Solutions, P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007). In *Exergen*, the Federal Circuit adopted the Seventh Circuit's position on what sufficient pleadings in fraud cases are, as articulated in *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990), and concluded that

> to plead the "circumstances of inequitable conduct with the requisite "particularity" under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO. Moreover, although "knowledge" and "intent" may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material representation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO.

575 F.3d at 1328–29.

In their amended answer and counterclaim, Defendants allege that the named inventors of the '008 Patent sought reissue of the '291 Patent based on knowingly false information contained in the reissue declarations they submitted to the Patent Office. In particular, Defendants assert that Talaber, one of the named inventors, submitted a declaration to the USPTO which stated that Acantha had initially claimed less than it had a right to claim and that the new claims it sought to reissue were broader than the original claims in the '291 Patent. Specifically, the Declaration states:

3

> Originally issued claims 1-20 of U.S. Patent No. 6,261,291 claimed less than patentees had a right to claim because claims 1-20 are directed to an orthopedic implant assembly that requires, inter alia, "a biased stopping member". New claim 63 is directed to an orthopedic implant assembly that includes a stopping member but the claim does not require the stopping member to be biased.

Am. Compl. at 13–14. Defendants allege that this statement is false because Talaber testified at his deposition more than five years later that the '008 Patent and the '291 Patent are identical in scope and that Acantha never intended to broaden the scope of the original claims. Instead, Defendants allege, Talaber testified repeatedly that the purpose for the reissue application was only to clarify the scope of the claims. Because it is clear the regulations governing applications for reissue do not allow reissue merely to clarify claims, Defendants contend that Talaber lied to the USPTO when he stated in his declaration that the application sought to broaden the claims to include additional matter covered by the patent that had been inadvertently omitted.

Regardless of Talaber's testimony five years later, however, it is clear from the declaration and the action taken by the USPTO that he did not engage in inequitable conduct. The plain fact remains that claims 1–20 of the '291 Patent were directed to an orthopedic implant assembly that required "a biased stopping member", whereas new claim 63, which later became claim 44 of the '008 Patent, is directed to an orthopedic implant assembly that includes a stopping member, but the claim does not require the stopping member to be biased. In other words, claim 44 removed a limitation contained in the claims of the '291 Patent and thereby broadened the scope of the patent. It necessarily follows that Talaber's declaration is not false. The change requested by Talaber, and granted by the USPTO, as a matter of objective fact, broadened the scope of the '291 Patent. Because the declaration is objectively true, Defendants' allegations of inequitable conduct necessarily fail. Accordingly, Acantha's motion to dismiss Count Three of Defendants' counterclaims and their affirmative defense, paragraph 11, are granted.

**B. Acantha's Motion to Strike**

Acantha moves, pursuant to Civil L.R. 7(h), to strike Defendants' second amended final invalidity contentions. ECF No. 121. On September 8, 2016, the court entered a scheduling order requiring Defendants to submit their Final Invalidity Contentions on or before April 18, 2017. Defendants properly served their initial final invalidity contentions but subsequently amended the contentions on May 30, 2017. On August 14, 2017, Defendants submitted their second amended final invalidity contentions, which disclosed a new prior art reference called the Codman Anterior Cervical Plate (Codman ACP), twenty-five hours before the close of fact discovery. Acantha asserts that allowing Defendants to rely on this new reference would be unjustified and prejudicial because Acantha would be deprived of any discovery on the reference or would be forced to take discovery in the midst of expert discovery. *Id.* at 2.

"Accused infringers must be 'diligent' in at least two respects with regard to their invalidity contentions: (1) in inquiring into potential invalidity evidence upon which to base their contentions, and (2) in amending their invalidity contentions to inform the patentee." *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, No. 09-C-0916, 2011 WL 13077073, at *1 (citing *Chemfree Corp. v. J. Walter, Inc.*, 250 F.R.D. 570, 573 (N.D. Ga. 2007)). A party seeking to amend its invalidity contentions must establish that it "acted with diligence in promptly moving to amend when new evidence is revealed." *O2 Micro Int'l, Ltd. v. Monolithic Power Sys.*, 467 F.3d 1355, 1363 (Fed. Cir. 2006). The accused infringer has the burden to demonstrate its diligence. *Kimberly-Clark*, 2011 WL 13077073, at *1. Once the accused infringer establishes diligence, the court must consider the potential prejudice to the opposing party. *See O2 Micro Int'l, Ltd.*, 467 F.3d at 1368.

Here, Defendants maintain that they were unaware of the role the Codman ACP played in the patented invention until Dr. Lloyd's July 21, 2017 deposition. They argue that they submitted the amended invalidity contentions, which included the Codman ACP as a prior art reference, less than one month after Dr. Lloyd's deposition. The final invalidity contentions were amended, they assert, in direct response to Dr. Lloyd's testimony regarding the scope of his invention as well as his knowledge and use of the Codman ACP prior to the development of the invention. The court finds that Defendants have demonstrated good cause to amend their invalidity contentions and were diligent in doing so.

However, the time to conduct fact discovery has passed, and Acantha argues that it would be prejudiced if it is required to engage in discovery relating to this new prior art reference while it prepares its expert reports. Yet, invalidity has been in this case from the beginning, and Acantha fails to specifically indicate what discovery is required regarding the Codman ACP. The court therefore finds that Acantha's conclusory assertion that it is prejudiced by the late amendment is unavailing. Accordingly, Acantha's motion to strike will be denied.

**C. Defendants' Motion to Limit Claims**

On August 16, 2017, Defendants filed a motion to limit the number of patent claims asserted by Acantha. ECF No. 108. They assert that Plaintiff has asserted 68 claims and that this large number of claims is excessive, is needlessly complicating the case, and is driving up costs. ECF No. 109 at 4. To that end, Defendants contend that Acantha should be limited to seven claims. Acantha asserts that it has never been opposed to reducing its asserted claims but argues that Defendants must reciprocally narrow or limit their invalidity case before it agrees to reduce its claims. ECF No. 119 at 4. Accordingly, Acantha requests that the court deny Defendants' motion, or alternatively

requests that the court permit Acantha to select twenty asserted claims and prevent Defendants from relying on the Codman ACP as a prior art reference in its invalidity contentions. *Id.* at 5.

"A district court has inherent authority to reasonably limit . . . the number of patent claims the parties may assert, 'to control the dispositions of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Masimo Corp. v. Philips Elecs. N. Am. Corp.*, 918 F. Supp. 2d 277, 282 (D.Del. 2013) (internal citations omitted) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936)); *see also Oasis Research, LLC v. Adrive, LLC*, No. 4:10-CV-00435, 2011 WL 7272473, at *2 (E.D. Tex. Sept. 13, 2011) (noting that courts have limited "the number of asserted claims in cases for patent infringement when the number of claims is so large as to make the case inefficient and unmanageable" (citation omitted)); *Medtronic Minimed Inc. v. Animas Corp.*, No. CV 12–04471, 2013 WL 3322248, at *1 (C.D. Cal. Apr. 5, 2013) ("It is undisputed that for the sake of judicial economy and management of a court's docket, a court may limit the number of asserted claims in a patent case."). The Federal Circuit has recognized that a district court may limit the number of claims a plaintiff may assert without depriving the plaintiff of due process of law as long as the court affords the plaintiff the opportunity to assert additional claims upon a showing of good cause. *See In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1312 (Fed. Cir. 2011); *see also Stamps.com Inc. v. Endicia, Inc.*, 437 F. App'x 897, 900–03 (Fed. Cir. 2011).

Because a court is expected to facilitate "the just, speedy, and inexpensive determination of every action and proceeding," the court finds that the number of claims Acantha asserts should be limited at this time. Fed. R. Civ. P. 1. Given that the claims in the '008 Patent are relatively duplicative, permitting Acantha to identify ten claims seems appropriate. Accordingly, Acantha must reduce the number of asserted claims to ten representative claims within seven days of the date of

7

this order. These limitations may be modified, however, upon a showing of good cause. That is, Acantha must establish how a particular unselected claim presents a unique issue to the case.

As to Acantha's request to limit Defendants' invalidity contentions, the court finds that such a limitation is unwarranted. "Just as the Court has the inherent authority to limit the patent claims that a plaintiff may assert, the Court also has the authority to limit the number of invalidity arguments and prior art references that defendants may assert." *Certusview Techs., LLC v. S & N Locating Servs., LLC*, No. 2:13cv346, 2014 WL 4930803, at *6 (E.D. Va. Oct. 1, 2014). Here, Acantha has not provided a compelling basis to further limit Defendants' asserted invalidity contentions. Courts only limit the number of a defendant's asserted prior art references as a reciprocal measure when the number of asserted references is unmanageable. *See, e.g.*, *id.*, at *7 (limiting defendant to asserting twenty-five prior art references); *Select Comfort Corp. v. Tempur Sealy Int'l, Inc.*, No. 14–245, 2015 WL 12781253, at *1 (D. Minn. Oct. 22, 2015) (reducing defendants' prior art references from 80 to 25); *SynQor, Inc. v. Artesyn Techs., Inc.*, No. 2:07-CV-497, 2011 WL 3625036, at *18 (E.D. Tex. Aug. 17, 2011) (limiting defendants to 40 prior art references). However, in this case, Defendants' second amended final invalidity contentions list only five prior art references that they will rely upon. As stated earlier, Defendants had good cause to amend their invalidity contentions to include the Codman ACP as a prior art reference. Moreover, the addition of this reference did not make Defendants' invalidity contentions unwieldy. In short, the court will not prevent Defendants from relying on the Codman ACP as a prior art reference in its invalidity contentions.

**D. Defendants' Motion to Compel**

Defendants filed a motion to compel documents and testimony regarding conception and diligence in reduction to practice. ECF No. 100. David Talaber, the inventor of the '008 Patent,

8

filed the application that led to the '008 Patent on July 8, 1999, two months after the filing of the Campbell patent application, U.S. Patent No. 6,258,089. Defendants assert that the Campbell patent constitutes prior art to the '008 Patent. But Talaber testified in his deposition that he conceived of the invention as early as September 15, 1997 and completed a draft patent application by September 22, 1998. Defendants contend that, in an effort to corroborate Talaber's deposition testimony, Acantha produced a set of heavily redacted documents regarding conception and diligence. They argue that by producing and attempting to rely on these documents, Acantha has waived privilege with respect to its communications with its patent attorneys relating to the issues of conception and diligence. Accordingly, Defendants request that Acantha be ordered to produce (1) all documents relating to the issues of conception and reduction to practice and (2) Talaber for deposition on these issues.

With respect to questions regarding attorney-client privilege, courts apply the law of the regional circuit. *See In re Pioneer Hi-Bred Intern., Inc.*, 238 F.3d 1370, 1374 (Fed. Cir. 2001); *see also In re Regents of Univ. of Cal.*, 101 F.3d 1386, 1390 n.2 (Fed. Cir. 2000) ("For procedural matters that are not unique to patent issues, we apply the perceived law of the regional circuit."). "The attorney-client privilege protects communications made in confidence by a client and a client's employees to an attorney, acting as an attorney, for the purpose of obtaining legal advice." *Sandra T.E. v. S. Berwyn School Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2009) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 394–99 (1981); *Trammel v. United States*, 445 U.S. 40, 51 (1980)). The Seventh Circuit has recognized that the privilege is "generally waived when the client asserts claims or defenses that put his attorney's advice at issue in the litigation." *Garcia v. Zenith Elecs. Corp.*, 58 F.3d 1171, 1175 (7th Cir. 1995). That is, a party waives attorney-client privilege when it relies

9

on privileged communications to establish its claim or defense. In these instances, "selective waiver of the privilege may lead to the inequitable result that the waiving party could waive its privilege for favorable advice while asserting its privilege on unfavorable advice." *In re EchoStar Commc'ns. Corp.*, 448 F.3d 1294, 1301 (Fed. Cir. 2006). To prevent this type of abuse, courts recognize that "when a party defends its actions by disclosing an attorney-client communication, it waives the attorney-client privilege as to all such communications regarding the same subject matter." *Id.*

Defendants assert that Acantha waived its right to assert the attorney-client privilege because it produced heavily redacted documents revealing the substance of communications it had with its attorneys relating to issues of conception and diligence. In support of their argument, Defendants rely on *Milwaukee Electric Tool Corp. v. Chevron North America Inc.*, No. 14-CV-1289-JPS, 2017 WL 2929522 (E.D. Wis. July 10, 2017). In that case, the defendants challenged the validity of the claims of the patents-in-suit based on certain prior art references. *Id.* at *2. In response, plaintiffs' counsel filed a declaration in connection with the *inter partes* reviews of the plaintiffs' patents, suggesting that his meetings with the plaintiffs pertained to the issues of conception and reduction to practice and attaching copies of invention disclosure forms. *Id.* The defendants asserted that the attorney revealed privileged communications in his declaration, while the plaintiffs argued that he submitted the declaration only to establish a timeline for relevant events related to conception. *Id.*

The court concluded that the filing of the declaration constituted a waiver of the plaintiffs' attorney-client privilege. *Id.* at *3. It reasoned that the attorney's declaration covered more than just the timing of events because he made substantive connections between the work being done, the forms being prepared, and the issues of conception and reduction to practice. *Id.* It noted that "[d]escribing the contents of a meeting or document and how it related to patentability standards like

10

conception and reduction to practice is well beyond a 'collateral matte[r]' which avoids the substance of attorney-client communications." *Id.* (alterations in original) (quoting *In re Dayco Corp. Derivative Sec. Litig.*, 102 F.R.D. 633, 635 (S.D. Ohio 1984)). Accordingly, the court granted the defendants' motion to compel and directed the plaintiffs to produce documents that contained or described communications between the plaintiffs and their patent counsel relating to the preparation of the patent applications directed to the alleged invention. *Id.* at *4.

In this case, although Acantha's redacted documents did not draw any obvious legal conclusions about patentability standards, by using certain portions of its attorney-client communications as evidence of its conception and diligence, it has placed its communications with its patent attorneys at issue. It has not just produced dates of meetings and documentation but also privileged information describing the contents of those meetings and documents as they relate to conception and diligence. For instance, Acantha relies on correspondence dated November 16, 1998 establishing that Acantha's patent attorneys performed a patentability search on the orthopedic implant device for fusing bone, but it redacted the summary and discussion portions of the letter related to that search. ECF No. 102-8 at 193–94. Acantha cannot be permitted to selectively hide behind its attorney-client privilege because that privilege "cannot be used as both a sword and a shield." *Trading Techs. Intern., Inc. v. eSpeed, Inc.*, 431 F. Supp. 2d 834, 839 (N.D. Ill. 2006) (citations omitted). That is, "a privilege holder 'cannot be allowed, after disclosing as much as he pleases, to withhold the remainder.'" *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005) (citations omitted). As the Federal Circuit has observed:

> The widely applied standard for determining the scope of a waiver of attorney-client privilege is that the waiver applies to all other communications relating to the same subject matter. The waiver extends beyond the document initially produced out of

11

> concern for fairness, so that a party is prevented from disclosing communications that support its position while simultaneously concealing communications that do not.

*Id.* (citations omitted). In short, Acantha waived the attorney-client privilege as to its communications regarding conception and diligence. *See EchoStar*, 448 F.3d at 1301.

Acantha requests, in the event the court finds that it waived its attorney-client privilege, that it be able to withdraw these documents. However, Acantha took the affirmative step of producing arguably privileged communications to support its cause. As a result, it cannot now retroactively disclaim reliance on the documents. Acantha will not be permitted to withdraw its documents. Accordingly, the court finds that Acantha must produce the documents sought in Defendants' motion to compel, but it may redact any portions of such documents that are unrelated to the issues of conception and reduction to practice. It must also provide Talaber for a deposition lasting no more than four hours, absent some showing of good cause, limited to the 35 redacted documents produced.

**E. Motions to Seal**

The parties have filed a number of motions to seal various documents related to these motions on the grounds that their disclosure would reveal confidential information. ECF Nos. 116, 127, 130 & 134. The sealed exhibits and filings contain information worthy of confidentiality under Federal Rule of Civil Procedure 26(c)(1)(G). The motions will therefore be granted.

**IT IS THEREFORE ORDERED** that Acantha's motion for judgment on the pleadings, or alternatively, to strike (ECF No. 91) is **GRANTED**.

**IT IS FURTHER ORDERED** that Acantha's motion to strike Defendants' invalidity contentions (ECF No. 121) is **DENIED**.

**IT IS ALSO ORDERED** that Defendants' motion to reduce the number of Acantha's asserted patent claims (ECF No. 108) is **GRANTED-IN-PART AND DENIED-IN-PART**. Acantha is directed to file an Election of Asserted Claims identifying no more than ten claims **within seven days** of the date of this order.

**IT IS FURTHER ORDERED** that Defendants' motion to compel documents and testimony regarding conception and diligence in reduction to practice (ECF No. 100) is **GRANTED**. Acantha is directed to produce the documents sought in Defendants' motion to compel **within ten days** of the date of this order. It may redact any portions of such documents that are unrelated to the issues of conception and reduction to practice. Acantha is also directed to provide Talaber for a deposition lasting no more than four hours, absent a showing of good cause, limited to the 35 redacted documents produced.

**IT IS ALSO ORDERED** that the motions to restrict (ECF Nos. 116, 127, 130 & 134) are **GRANTED**. The documents referred to in those motions should be filed by the clerk under seal.

The Clerk is directed to set this matter on the court's calendar for a telephone conference to address any modification to the scheduling order after the parties have had the opportunity to confer.

Dated this 8th day of November, 2017.

                                             s/ William C. Griesbach
                                             William C. Griesbach, Chief Judge
                                             United States District Court