# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN
## GREEN BAY DIVISION

ACANTHA LLC,

       Plaintiff,

      v.

DEPUY SYNTHES SALES, INC., DEPUY
SYNTHES PRODUCTS, INC., DEPUY
SYNTHES, INC., JOHNSON & JOHNSON,
INC., SYNTHES, INC., SYNTHES USA,
LLC, DEPUY ORTHOPAEDICS, INC., and
DEPUY SPINE, LLC,

       Defendants.

Civil Action No. 1:15-cv-01257

Judge William C. Griesbach

**REDACTED PUBLIC VERSION**

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF JAMES E. MALACKOWSKI

**TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................................. 1

II.     BACKGROUND FACTS ....................................................................................... 2

        A.      The '008 Patent And The Accused Products ........................................... 2

        B.      The Acantha/Stryker License .................................................................. 3

        C.      The Globus Litigation .............................................................................. 4

        D.      The Malackowski Reports ....................................................................... 5

III.    LEGAL STANDARD ............................................................................................ 6

IV.     ARGUMENT ......................................................................................................... 7

        A.      Malackowski's Opinions Are Unreliable Because He Does Not Apply A
                Proper Hypothetical Negotiation Methodology ...................................... 8

        B.      Malackowski's Opinions Are Unreliable And Irrelevant Because They Are
                Not Supported By Sufficient Facts Or Data .......................................... 11

        C.      Malackowski's Opinions Are Unreliable Because He Does Not Apportion
                His Reasonable Royalty .......................................................................... 15

                1.      Apportionment Is Required Here ............................................... 16

                2.      Malackowski Fails to Apportion His Royalty ........................... 17

V.      CONCLUSION .................................................................................................... 20

# TABLE OF AUTHORITIES

**Page**

CASES

*AstraZeneca AB v. Apotex Corp.*,
    782 F.3d 1324 (Fed. Cir. 2015)..........................................................................17

*Atlas IP, LLC v. Medtronic, Inc.*,
    No. 13-CIV-23309, 2014 U.S. Dist. LEXIS 158787 (S.D. Fl. Oct. 6, 2014) ..........................14

*Carucel Invs., L.P. v. Novatel Wireless, Inc.*,
    No. 16-cv-118-H-KSC, 2017 U.S. Dist. LEXIS 50855 (S.D. Cal. Apr. 3,
    2017) ..................................................................................................9

*CSIRO v. Cisco Sys., Inc.*,
    809 F.3d 1295 (Fed. Cir. 2015)..........................................................................19

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993).......................................................................................6

*DePuy Synthes Products, LLC v. Globus Medical, Inc.*,
    No. 11-652 (D. Del. 2011) ................................................................4, 5, 12, 13

*Emerson Elec. Co. v. Suzhou Cleva Elec. Appliance Co.*,
    No. 4:13CV1043, 2015 U.S. Dist. LEXIS 167388 (E.D. Mo. Dec. 15, 2015).......................17

*Enovsys LLC v. AT&T Mobility LLC*,
    No. CV 11-5210 SS, 2015 U.S. Dist. LEXIS 176546 (C.D. Cal. Aug. 10,
    2015) ................................................................................................16

*Ericsson, Inc. v. D-Link Sys.*,
    773 F.3d 1201 (Fed. Cir. 2014).....................................................................15, 17

*Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp, LLC*,
    No. 2016-2197, 2018 U.S. App. LEXIS 783 (Fed. Cir. Jan. 12, 2018)..............................18

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
    No. 2016-2520, 2018 U.S. App. LEXIS 601 (Fed. Cir. Jan. 10, 2018)..............................13

*Gen. Elec. Co. v. Joiner*,
    522 U.S. 136 (1997)....................................................................................6, 7

*GoDaddy.com LLC v. RPost Communs. Ltd.*,
    No. CV-14-00126-PHX-JAT, 2016 U.S. Dist. LEXIS 61670 (D. Ariz. May
    10, 2016) ..................................................................................................................17

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999)....................................................................................................6

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
    694 F.3d 51 (Fed. Cir. 2012)............................................................................... passim

*Lewis v. CITGO Petro. Corp.*,
    561 F.3d 698 (7th Cir. 2009) .....................................................................................7

*Lucent Tech., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009).....................................................................7, 8, 9, 12

*Myers v. Ill. Cent. R.R. Co.*,
    629 F.3d 639 (7th Cir. 2010) .....................................................................................6

*Noskowiak v. Bobst Sa*,
    No. 04-C-0642, 2005 U.S. Dist. LEXIS 19536 (E.D. Wisc. Sept. 2, 2005)..............7

*Rembrandt Social Media, LP v. Facebook, Inc.*,
    222 F. Supp. 3d 585 (E.D. Va. 2013) .....................................................................16

*ResQNet.com, Inc. v. Lansa, Inc.*,
    594 F.3d 860 (Fed. Cir. 2010)................................................................7, 8, 12, 15

*Riles v. Shell Exploration & Prod. Co.*,
    298 F.3d 1302 (Fed. Cir. 2002)...............................................................................15

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011)...................................................................2, 7, 16

*Vasudevan Software, Inc. v. MicroStrategy Inc.*,
    No. 11-cv-06637-RS-PSG, 2013 U.S. Dist. LEXIS 31902 (N.D. Cal. Feb. 15,
    2013), *aff'd* 782 F.3d 671 (Fed. Cir. 2015)............................................................13

*VirnetX, Inc. v. Cisco Sys.*,
    767 F.3d 1308, 1326 (Fed. Cir. 2014)....................................................................17

STATUTES

35 U.S.C. § 284....................................................................................................................7

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26.................................................................................................................6

FRE 702............................................................................................................................6, 8

FRE 403................................................................................................................................8

## Table of Abbreviations

| Term | Abbreviation |
|---|---|
| Acantha LLC | Acantha or Plaintiff |
| DePuy Synthes Sales, Inc., DePuy Synthes Products, Inc., DePuy Synthes, Inc., Johnson & Johnson, Synthes, Inc., Synthes USA, LLC, DePuy Orthopaedics, Inc., and DePuy Spine, LLC | Defendants |
| DePuy Synthes Products, Inc., DePuy Synthes Sales, Inc. and their predecessors in interest | DePuy Synthes |
| U.S. Patent No. RE43,008 | the '008 patent |
| Defendants' Vectra, Vectra-T, Vectra One, and Zero-P VA products | Accused Products |
| November 14, 2017 Deposition Transcript of James E. Malackowski | Malackowski Tr. |
| September 15, 2017 Expert Report of James E. Malackowski | Malackowski Rep. |
| March 31, 2003 License Agreement between Acantha and Stryker | 2003 Stryker License |
| January 1, 2013 Amendment to the Acantha-Stryker License Agreement | 2013 Stryker Amendment |
| November 2, 2017 Deposition Transcript of Dr. Barton L. Sachs | Sachs Tr. |
| July 21, 2017 Deposition Transcript of James R. Lloyd, M.D., | Lloyd Tr. |
| August 11, 2017 Deposition Transcript of Ian Burgess | Burgess Tr. |
| November 29, 2017 Deposition Transcript of David A. Haas | Haas Tr. |

# I.    INTRODUCTION

Acantha's damages expert, James E. Malackowski ("Malackowski"), should be excluded from testifying in this case. Malackowski's methodology is unreliable, and his opinions lack factual support and violate established law requiring apportionment. Malackowski did not determine "the economic benefit of [Acantha's alleged] invention as used by [Defendants]," as he concedes a reasonable royalty determination must. (Ex. A, Malackowski Tr. at 169:11-14.)[1] Rather, his analysis is a transparent attempt to justify Acantha's predetermined ███ royalty rate—███████████████████████████████████████████████████████████ ██████████████. As Defendants advised the Court in connection with Acantha's motion to compel documents from the prior litigation between Synthes and Globus, Acantha has been intent on seeking the same 15% royalty that a jury awarded in the Globus litigation (Ex. B, 9/11/17 Hearing Tr. at 17:9-16), ████████████████████████████████████████████ ██████████████████.

Malackowski committed three independently fatal errors in reaching his ██████ range: (1) he did not apply a proper hypothetical negotiation methodology—remarkably, he uses the wrong licensor; (2) the quantitative indicators on which he relied as a starting point are not supported by sufficient facts; and (3) he failed to apportion based on the value of the patented features as required by binding Federal Circuit precedent. These flaws cannot be cured through cross-examination, and allowing Malackowski to present his unreliable opinions—applying an artificially inflated royalty rate to the entire market value of the accused products—will undoubtedly "artificially inflate the jury's damages calculation beyond that which is 'adequate to compensate for the infringement.'" *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51,

---

[1] All Exhibit citations are to the Declaration Of Kenneth S. Luchesi In Support Of Defendants' Motions to Exclude the Opinions and Testimony of James E. Malackowski, filed concurrently herewith, unless otherwise noted.

68 (Fed. Cir. 2012) (quoting *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011)). Malackowski's opinions should be excluded in their entirety.

## II. BACKGROUND FACTS

### A. The '008 Patent And The Accused Products

Acantha accuses Defendants[2] of infringing certain claims of the '008 Patent through the manufacture, sale and use of the accused Vectra and Zero-P VA products. The Accused Products represent two different categories of spinal implants. Vectra is a traditional anterior cervical plating system, while Zero-P VA is a stand-alone, interbody fusion device that includes a plate portion (green) and a spacer portion (gray):[3]




| **Vectra** | **Zero-P VA** |

Acantha did not invent anterior cervical plating systems or stand-alone interbody fusion devices. (Ex. C, Malackowski Rep. at 11-12.) Nor did Acantha invent "semi-constrained" implants, *i.e.*, implants that allow for movement of the screws relative to the plate itself. (Ex. A, Malackowski Tr. at 43:21-44:2.) Rather, the '008 Patent is directed to a particular screw backout-mechanism that can be used in such devices. (Luchesi SJ Dec., Ex. 1.) But Acantha did not invent screw

---

[2] Acantha named eight separate entities as Defendants in this litigation. Only two—DePuy Synthes Products, Inc. and DePuy Synthes Sales, Inc.—have any involvement in the manufacture and sale of the accused products.

[3] These images are from the surgical technique guides for Vectra and Zero-P VA, which are attached to the Declaration of Kenneth Luchesi in Support of Defendants' Motions for Partial Summary Judgment ("Luchesi SJ Dec."), filed concurrently herewith, as Exhibits 2 and 3, respectively.

backout-mechanisms either. Both one-step and two-step blocking mechanisms existed prior to the '008 Patent. (Ex. A, Malackowski Tr. at 42:17-22, 43:25-44:2.) Most importantly, for purposes of this motion, it is undisputed that the accused products include additional unpatented features that also drive sales, including the zero profile, spacer, and contralateral stops of Zero-P VA, and the visualization window, variable angle screws, translational plate, and number of screws used in the Vectra family of products. (Ex. A, Malackowski Tr. at 50:13-57:16, 59:1-60:20, 73:24-76:7; Ex. D at DEPACAN0165079; Ex. E at 7.)

**B.    The Acantha/Stryker License**

The only license agreement relating to the patent-in-suit was entered in 2003 between Acantha and Stryker, a manufacturer of spinal implant products and a competitor of DePuy Synthes. (Ex. F; Ex. A, Malackowski Tr. at 91:16-20, 92:7-19; Ex. C, Malackowski Rep. at 24.)





In 2013, Stryker and Acantha entered into an amendment to the agreement. (Ex. G.)

### C. The Globus Litigation

As set forth previously in connection with Acantha's motion to compel, DePuy Synthes and Globus, another competitor in the spinal implant industry, engaged in a protracted legal battle involving four separate lawsuits, including two different patent infringement lawsuits, over a period of several years. (Dkt. 95 at 4-7.) One of those cases, *DePuy Synthes Products, LLC v. Globus Medical, Inc.*, No. 11-652 (D. Del. 2011) ("*Globus I*"), was tried to a jury in 2013. The case involved three Synthes patents that were directed to stand-alone interbody fusion devices. (Ex. C, Malackowski Rep. at 35-36; Ex. H, Sachs Tr. at 199:2-6.) The jury found that Globus's products infringed all three patents and awarded DePuy Synthes a royalty of 15% for the infringement.[5] (Ex. A, Malackowski Tr. at 182:8-23, 183:18-24.) DePuy Synthes and Globus

---

[4]

[5] Acantha and Malackowski exaggerate the role of Zero-P VA in *Globus I* (*see* Ex. C, Malackowski Rep. at 36; Dkt. 88 at 2)—it was a commercial embodiment of two of the three Synthes patents, neither of which covered a screw back-out prevention mechanism. (Dkt. 95 at

subsequently entered into a settlement agreement in 2016 to resolve all four cases between them, including *Globus I.* (Ex. J.) ██████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████

## D.    The Malackowski Reports

Malackowski served his initial report on September 15, 2017 in which he offered an opinion that, based on a hypothetical negotiation between non-party Stryker and DePuy Synthes, a reasonable royalty in this case would be between ██████ of the net sales of the Accused Products.  (Ex. C.)  He then applied his rates to a base that consisted of the entire market value of the accused products to reach his conclusion as to the amount of damages that Acantha is entitled to recover.  (Ex. C, exhibit 3.1.)

On October 9, 2017, Malackowski served a supplemental report, which stated simply that he had received additional documents relating to the litigation between DePuy Synthes and Globus produced after his initial report was served, and those documents confirmed his opinions. (Ex. L.)  This supplement did not specifically identify any of those documents, nor did it identify

---

(continued…)

15.)  It was not a commercial embodiment of the third patent, which included a screw back-out mechanism consisting of a separate securing plate.  (*Id*.)  Moreover, Zero-P VA had only recently been introduced at the time of the trial in Globus I, and was only a small percentage of the sales of Synthes' patented products.

which opinions such documents "confirmed."[6]  (Ex. A, Malackowski Tr. at 12:13-13:16; *see also* Ex. M, 10/12/17 Letter Stitt to Stewart.)

## III.    LEGAL STANDARD

Courts have a duty to ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993).  The primary inquiry "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue."  *Id*. at 592-93.  Federal Rule of Evidence 702, as applied in *Daubert* and later in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), provides that an expert may give opinion testimony only if: (1) the opinion is based on sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has applied the principles and methods reliably to the facts of the case.  In applying the foregoing test, courts consider whether the expert's methodology is reliable and whether the testimony is relevant, *i.e.*, whether it will assist the fact-finder to understand the evidence or determine a fact in issue.  *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010).

The trial court's gatekeeper role is not limited to an evaluation of the reliability of the methods used by an expert, but also extends to a review of the strength of the connection between an expert's conclusions and the facts on which those conclusions are based.  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).  The expert's testimony is unreliable and should be excluded where evidence is "connected to existing data only by the *ipse dixit* of the expert" and the court concludes that "there is simply too great an analytical gap between the data and the

---

[6] DePuy Synthes submits that Malackowski should be precluded from relying on any of those documents to support his opinions because his supplement fails to meet the requirements of Fed. R. Civ. P. 26.

opinion proffered." *Id.* In addition, when an expert applies the wrong legal standard, the opinions should be excluded as irrelevant. *Noskowiak v. Bobst Sa*, No. 04-C-0642, 2005 U.S. Dist. LEXIS 19536, at *14 (E.D. Wisc. Sept. 2, 2005).

Ultimately, the "patentee bears the burden of proving damages." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011). "[T]he damages inquiry must concentrate on compensation for the economic harm caused by infringement of the claimed invention." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010). "Thus, the trial court must carefully tie proof of damages to the claimed invention's footprint in the market place." *Id.* Upon a showing of infringement, a patentee is entitled to recover "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty . . . ." 35 U.S.C. § 284. The reasonable royalty theory of damages seeks to compensate the patentee for its lost opportunity to obtain a reasonable royalty that the infringer would have been willing to pay if it had been barred from infringing. *Lucent Tech., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009). The goal is to "discern the value of the patented technology to the parties in the marketplace when infringement began." *LaserDynamics*, 694 F.3d at 76.

Acantha, as the proponent of Mr. Malackowski's reasonable royalty testimony, bears the burden to prove its relevance and reliability by a preponderance of the evidence. *Lewis v. CITGO Petro. Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). Acantha cannot meet its burden.

## IV. ARGUMENT

Malackowski's opinions should be excluded in their entirety because (1) he does not apply a proper hypothetical negotiation methodology; (2) his quantitative analysis is not supported by sufficient facts or data; and (3) he fails to apportion based on the value of the patented features. Each of the foregoing flaws alone warrants exclusion of Malackowski's

reasonable royalty opinions as unreliable under FRE 702, and the combination of all three of them underscores the need for exclusion to avoid prejudice under FRE 403.

### A. Malackowski's Opinions Are Unreliable Because He Does Not Apply A Proper Hypothetical Negotiation Methodology.

The use of a hypothetical negotiation methodology to determine reasonable royalty damages is well-established and accepted in patent infringement cases. *Lucent*, 580 F.3d at 1324. "A 'reasonable royalty' derives from a hypothetical negotiation between the *patentee* and the *infringer* when the infringement began." *ResQNet.com*, 594 F.3d at 868 (emphasis added). This methodology assumes that the parties are willing and able to enter into an agreement. *Lucent*, 580 F.3d at 1324; *LaserDynamics*, 694 F.3d 77. Thus, the determination of an appropriate reasonable royalty in this case begins with the question: if Acantha and DePuy Synthes entered into an arms-length negotiation just before the introduction of the accused Vectra product in 2005 for the use of the patented invention, what would be the result?

But that is not the question Malackowski answered. He did not place Acantha, the patentee, and Depuy Synthes, the accused infringer, in a hypothetical world where they would be willing and able to enter into a license agreement, as the accepted methodology requires. *LaserDynamics*, 694 F.3d at 77. Instead, Malackowski placed Stryker at the table as the hypothetical licensor—even though he admits that Stryker is not (and never has been) a party to this litigation, ████████████████████████████████████████████████

████████████████ (Ex. C, Malackowski Rep. at 23, 26-27; Ex. A, Malackowski Tr. at 87:3-88:21.) According to Malackowski, he chose Stryker as the hypothetical licensor ████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████

Setting aside the fact that Malackowski is not a lawyer and has no basis to opine on legal issues (Ex. A, Malackowski Tr. at 18:14-18), ███████████████████████████████████

████████████████████████████████████████████████████████████

is irrelevant because the reasonable royalty negotiation is, by definition, hypothetical. *See Carucel Invs., L.P. v. Novatel Wireless, Inc.*, No. 16-cv-118-H-KSC, 2017 U.S. Dist. LEXIS 50855, at *26 (S.D. Cal. Apr. 3, 2017) ("Whether Verizon would have actually negotiated with Plaintiff is irrelevant to the hypothetical negotiation") (citing *Oracle v. SAP AG*, 765 F.3d 1081, 1088 (9th Cir. 2014) ("The very word 'hypothetical' indicates that damages may be awarded in the absence of an actual license"). The hypothetical negotiation construct is simply a construct designed to determine the amount of damages that are appropriate to compensate the patentee for infringement. *Lucent*, 580 F.3d at 1324. By placing Stryker at the table instead of Acantha, Malackowski abandons the fundamental purpose of the hypothetical negotiation framework, ███

████████████████████████████████████████████████████████████

███████████████████████████████████.

Malackowski engaged in this farcical analysis in a transparent effort to artificially inflate the royalty rate. ████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████



168:14.)  Malackowski's analysis also violates accepted methodology because it is entirely one-sided and does not consider DePuy Synthes' position.  He fails to identify any evidence that DePuy Synthes would have been willing to accept the rates he claims Stryker would have sought .

But that is ultimately beside the point for purposes of this motion.  Here, the only issue is whether Malackowski's opinion complies with the hypothetical negotiation methodology recognized and accepted by the courts.  Plainly, it does not.  Indeed, Malackowski's analysis does not even attempt to answer the fundamental question: what royalty would be adequate to compensate Acantha for the use of the patent-in-suit?  Instead, it seeks to artificially inflate that number by purporting to determine the royalty rate that non-party Stryker would have sought to obtain, and then opining that Acantha should be awarded that amount.  Malackowski should be excluded.

### B. Malackowski's Opinions Are Unreliable And Irrelevant Because They Are Not Supported By Sufficient Facts Or Data.

A hypothetical negotiation "necessarily involves an element of approximation and uncertainty, but it must be based on "sound economic and factual predicates."  *LaserDynamics*,

(continued…)

694 F.3d at 67, 76. Malackowski's reasonable royalty analysis is not. Rather, his ████████

range is lifted directly from the unrelated Globus litigation materials. (*See* Ex. A, Malackowski

Tr. at 189:3-18, 190:1-12, 95:4-96:2.) Acantha was not a party to Globus litigation, nor was the

asserted patent at issue. But there can be little doubt *why* Acantha and Malackowski have zeroed

in on *Globus I*. The 15% royalty rate awarded by the jury in that case far exceeds ████—the

highest royalty rate Acantha has ever received for the patented invention—and presents a much

more lucrative starting point for a reasonable royalty analysis from Acantha's perspective.

Malackowski makes no attempt to downplay the importance of the Globus litigation to

his opinions. Just the



It is Acantha's burden to demonstrate *how* the Globus litigation and settlement agreement

are probative of a hypothetical negotiation for the single (and admittedly different) patent at issue

in this case. *Lucent*, 580 F.3d at 1329. The Federal Circuit "has long required district courts

performing reasonable royalty calculations to exercise vigilance when considering past licenses

to technologies other than the patent in suit." *ResQNet*, 594 F.3d at 869 (citing *Lucent*, 580 F.3d

at 1329). The mere fact that the licensed technology is in the same general field is insufficient,

and "alleging a loose or vague comparability between different technologies or licenses does not

---

[9]




suffice." *LaserDynamics*, 694 F.3d at 79; *see also Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 2016-2520, 2018 U.S. App. LEXIS 601, at *29-30 (Fed. Cir. Jan. 10, 2018). But that is all Malackowski does.

Malackowski concedes that a prerequisite to consideration of the Globus litigation or resulting settlement agreement in his reasonable royalty analysis is the technical comparability of the *patents* at issue.[10] (Ex. A, Malackowski Tr. at 181:1-6, 207:6-18.) Although he claims that from a "common sense point of view" the comparability of the technology at issue is "not a difficult call," Malackowski relies on the substantive opinions of Dr. Barton Sachs, Acantha's technical expert, to support the alleged technical comparability of the patents in the Globus litigation. (Ex. A, Malackowski Tr. at 181:18-182:7.) But Dr. Sachs did not offer an opinion that the ***patents*** at issue in *Globus I* (or any of the other patents that are the subject of the settlement agreement) are technically comparable to the asserted patent here. Rather, his opinion was based on the alleged comparability of the Synthes ***products*** in *Globus I* (*i.e.*, Zero-P VA) to the Acantha patent. In fact, Dr. Sachs expressly disclaimed any opinion that the Acantha patent is technically comparable to the three Synthes patents:

> Q.   So you are not saying as I understand
> it that the Acantha patent is technically
> comparable to the Synthes patents, am I correct?
> A.   No.
> Q.   Okay.   Is the –

---

[10] Other courts addressing the relevance of other patent litigation have adopted a technological nexus standard, which is informative here. *See Vasudevan Software, Inc. v. MicroStrategy Inc.*, No. 11-cv-06637-RS-PSG, 2013 U.S. Dist. LEXIS 31902, at *9, (N.D. Cal. Feb. 15, 2013), *aff'd* 782 F.3d 671 (Fed. Cir. 2015) ("The starting point of the 'technological nexus' standard is not the product; the starting point is the patent-at-issue. Similarity thus arises from whether the other litigation involved patents, technology, or features similar to the patent-at-issue, not whether the other litigation involved patents, technology, or features similar to the product at issue.").

A.  Not in that sentence.

…

Q.  Right.  You're saying the Zero P-VA
product is technically comparable, you're not
saying that the three Synthes patents are
technically comparable; is that correct?
A.  Yes.

(Ex. H, Sachs Tr. at 202:24-203:4, 207:5-9.)  He further testified that the Synthes patents are

"teaching a different – a different approach and a different issue and different fixation and

different components and different design" than Acantha's alleged invention.  (Ex. H, Sachs Tr.

at 221:23-223:5.)

The  failure  to  establish  technical  comparability  is  just  the  tip  of  the  iceberg  when  it

comes  to  the  problems  with  Malackowski's  reliance  on  the  Globus  litigation  materials.   The

circumstances  surrounding  both  the  Globus  jury  verdict  and  settlement  agreement  are  far  afield

from  those  of  the  current  hypothetical  negotiation.   The  jury  verdict  was  based  on  infringement

of  three  Synthes  patents.   (Ex. A,  Malackowski Tr.  at  183:18-22.)   As  one  court  held  in

excluding  damages  expert  testimony,  "it  is  self-evident  jury-determined  damages  are  not

evidence  of  arm's  length  negotiations  between  parties."   *Atlas IP, LLC v. Medtronic, Inc.*,  No.

13-CIV-23309,  2014  U.S.  Dist.  LEXIS  158787,  at  *16  (S.D.  Fl.  Oct.  6,  2014).  ████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

Yet,  Malackowski  makes  no  attempt  to  account  for  these  admitted  differences,  and  instead

simply adopts the same rates.

Absent  the  Globus  litigation  materials,  Malackowski  has  no  factual  support  for  his

reasonable  royalty  range  of  █████.   In  fact,  Malackowski's  reliance  on  the  rates  in  the  Globus

litigation materials leads him to the absurd contention that the ████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ As in

*ResQNet*, the "inescapable conclusion" here is that Malackowski used the unrelated and

irrelevant Globus litigation to "push the royalty up into double figures." 594 F.3d at 870. That

alone renders his opinions unreliable.

In allowing Acantha limited discovery concerning the Globus litigation, the Court

cautioned that "it seems to me the result in the Globus litigation isn't going to be that relevant.

It's not admissible in all likelihood…." (Ex. B, 9/11/2017 Hearing Tr. at 27:3-5.) The Court

was correct, and, notably, Malackowski does not cite to or rely on any of the documents

Defendants produced in response to Acantha's requests. Instead, Malackowski's opinions

confirm what Defendants said all along—Acantha is merely seeking to use the jury verdict in

that case to bootstrap a royalty analysis that is completely untethered to the value of the actual

patent-in-suit. This is impermissible and Malackowski's opinions based on the Globus litigation

materials should be excluded.

### C. Malackowski's Opinions Are Unreliable Because He Does Not Apportion His Reasonable Royalty.

An essential requirement for an expert's damages analysis is "that the ultimate reasonable

royalty award must be based on the incremental value that the patented invention adds to the end

product." *Ericsson, Inc. v. D-Link Sys.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014); *see also Riles v.*

*Shell Exploration & Prod. Co.*, 298 F.3d 1302, 1312 (Fed. Cir. 2002). Consequently, if a

patentee cannot show that "the entire value of the whole machine, as a marketable article, is

properly and legally attributable to the patented feature," it must "give evidence tending to

separate or apportion the defendant's profits and the patentee's damages between the patented

feature and the unpatented features." *Uniloc USA, Inc.*, 632 F.3d at 1318; *see also Enovsys LLC v. AT&T Mobility LLC*, No. CV 11-5210 SS, 2015 U.S. Dist. LEXIS 176546, at *16-17 (C.D. Cal. Aug. 10, 2015) (holding that failure to apportion "is a methodological error that the Court must address due to the Court's gatekeeper role"). Malackowski's opinions should be excluded because he fails to do so—and this is not the first time he has made this mistake. *See Rembrandt Social Media, LP v. Facebook, Inc.*, 222 F. Supp. 3d 585, 594-596 (E.D. Va. Dec. 2013) (granting motion to exclude Malackowski's opinions for failure to apportion).

### 1. Apportionment Is Required Here.

It is undisputed that the requirements for the entire market value rule are not met. *Uniloc*, 632 F.3d at 1318 (to apply the entire market value rule a patentee must show that "the patented feature creates the 'basis for customer demand' or 'substantially create[s] the value of the component parts'") (quoting *Lucent*, 580 F.3d at 1336). Malackowski expressly disclaimed any intent to apply the entire market value rule—he admitted that he was not offering an opinion that the patented designs were the sole driver of value for the accused products. (Ex. A, Malackowski Tr. at 40:24-41:3.) He also admitted that numerous features other than the patented invention contributed to the sales of the accused products. (Ex. A, Malackowski Tr. at 50:13-57:16, 59:1-60:20, 73:24-76:7; Ex. D at DEPACAN0165079; Ex. E at 7.)

Malackowski's claim that apportionment is not required because the patented invention covers the accused products as a whole fails. (Ex. C, Malackowski Rep. at 20.) He purports to rely on Dr. Sachs for this assertion, but Dr. Sachs' opinions and other record evidence—including Malackowski's own testimony—point to the contrary. (*See* Ex. H, Sachs Tr. at 96:9-97:24; Ex. C, Malackowski Rep. at 11-12 ; Ex. A, Malackowski Tr. at 43:21-24, 42:17-22, 43:25-44:2.) Indeed, it is undisputed that the accused products include numerous features not

covered by the asserted patent that contribute to sales.[11]  (Ex. A, Malackowski Tr. at 50:13-57:16, 59:1-60:20, 73:24-76:7.)  Thus, it is inconsistent for Malackowski to claim that he need not apportion because the invention covers the accused product as a whole.  *See GoDaddy.com LLC v. RPost Communs. Ltd.*, No. CV-14-00126-PHX-JAT, 2016 U.S. Dist. LEXIS 61670, at *21-22, n.7 (D. Ariz. May 10, 2016); *Emerson Elec. Co. v. Suzhou Cleva Elec. Appliance Co.*, No. 4:13CV1043, 2015 U.S. Dist. LEXIS 167388, at *15 (E.D. Mo. Dec. 15, 2015).  The principles of apportionment apply here.

### 2.    Malackowski Fails to Apportion His Royalty.

A patentee "must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented features and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative." *LaserDynamics*, 694 F.3d at 67 (quoting *Garretson v. Clark*, 111 U.S. 120, 121 (1884)).  "[T]he governing rule is that the ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more." *Ericsson*, 773 F.3d at 1226 (citing *VirnetX, Inc. v. Cisco Sys.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014)).  Mr. Malackowski violates that rule.

First, Malackowski admittedly used the entire market value of the accused products as his royalty base.  (Ex. A, Malackowski Tr. at 31:20-32:4, 64:2-25, 32:5-11.)  He did not apportion that base in any way, and he admits it includes revenue for unpatented features.  (Ex. A, Malackowski Tr. at 63:9-18, 73:6-23.)  Malackowski's base is overstated for at least two reasons: (1) he included revenue for unpatented instruments that can be used with the Accused

---

[11] Accordingly, Acantha's reliance on *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324 (Fed. Cir. 2015) is inapposite.  This is not a case where "[t]here is no unpatented or non-infringing feature in the product." *Id*. at 1338.

Products (Ex. A, Malackowski Tr. at 32:12-34:6, 38:6-39:16); and (2) he included revenue for the unpatented spacer portion of the Zero-P VA product (Ex. A, Malackowski Tr. at 67:8-12).

Second, Malackowski's claim that all apportionment necessary was accounted for in his rate is wholly unsupported by facts or data. (Ex. A, Malackowski Tr. at 31:20-32:4, 60:21-61:10.) Contrary to Malackowski's assertion, the mere fact that his rate is less than 100% does not mean that he apportioned for the value of unpatented features.[12] (Ex. A, Malackowski Tr. at 79:6-19.) Malackowski cites to no evidence of the percentage of the total value of the Accused Products attributable to the "patented invention," and at no point did he adjust his rate to discount the value of the unpatented features he admits contribute to the sales of the Accused Products. Nor did he not conduct any surveys to determine the relative importance of these features to surgeons.[13] (Ex. A, Malackowski Tr. at 44:20-21.) His claim that such apportionment is inherent because he used a comparable licensing methodology based on ███ ███████████████████████████████████████████████—fails as a matter of law and fact. (Ex. A, Malackowski Tr. at 79:20-80:25.)

Comparable licenses including rates based on net sales can be considered in a reasonable royalty analysis, but the use of such licenses does not, as Malackowski contends, excuse a patentee from the apportionment requirement. (*See* Ex. C, Malackowski Rep. at 19-20.) He must still explain whether and how those licenses took into account the value of the patented invention as opposed to other features, and account for any differences in his royalty rate. *See*

---

[12] *See Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp, LLC*, No. 2016-2197, 2018 U.S. App. LEXIS 783, at *36-37 (Fed. Cir. Jan. 12, 2018) ("we cannot agree that using an allegedly low royalty rate alone supports the admissibility of the expert's reasonable royalty opinion").

[13] Dr. Sachs, a surgeon who uses the products at issue, identified numerous reasons other than the screw backout-mechanism that drive him to choose a particular product, including the service representative. (Ex. H, Sachs Tr. at 63:6-64:11, 67:20-25, 79:4-80:11.)

*CSIRO v. Cisco Sys., Inc.*, 809 F.3d 1295, 1303 (Fed. Cir. 2015).[14] He does not. Even assuming that Stryker and Acantha took into account the apportionment principles required in a damages analysis when negotiating the 2003 license, ████████████████████████████████



████████████████████████████. He cannot credibly claim that apportionment is inherent in his analysis of the 2003 Stryker License.

Moreover, his range is identical to the two rates found in the Globus litigation materials—despite the fact that he admits that the jury verdict involved three different patents ████████████████████████████████████. (Ex. C, Malackowski Rep. at 35-37; Ex. A, Malackowski Tr. at 182:16-23, 183:18-24, 184:15-22.) To the extent that any apportionment was inherent in the Globus litigation materials, it was for the value of multiple different patents at issue there, not the patented invention Acantha claims DePuy Synthes took here. Malackowski made no adjustment to account for those admitted differences. His assertion of so-called inherent apportionment is, at best, pure speculation and his opinions violate binding Federal Circuit precedent requiring reliable and tangible evidence of apportionment. *LaserDynamics*, 694 F.3d at 67.

---

[14] Malackowski mischaracterizes the holding of this case. (Ex. C, Malackowski Rep. at 19.)

## V. CONCLUSION

For the foregoing reasons, Malackowski's damages opinions are unreliable and irrelevant, and should be excluded in their entirety.

Dated:  January 18, 2018

Tracy A. Stitt
**JONES DAY**
51 Louisiana Avenue NW
Washington, DC 20001
(202) 879-3939
tastitt@jonesday.com

  /s/ *Kenneth S. Luchesi*
Calvin P. Griffith
Patrick J. Norton
Kenneth S. Luchesi
Michael S. Weinstein
**JONES DAY**
North Point
901 Lakeside Avenue
Cleveland, OH  44114-1190
Telephone:  (216) 586-3939
Facsimile:   (216) 579-0212
Email:  cpgriffith@jonesday.com
       pjnorton@jonesday.com
       kluchesi@jonesday.com
       msweinstein@jonesday.com

John P. Fredrickson
**BOYLE FREDRICKSON**
840 North Plankinton Avenue
Milwaukee, WI  53203
Telephone:  (414) 225-9755
Facsimile:  (414) 225-9753
Email:  jpf@boylefred.com

*Attorneys for Defendants/Counterclaim Plaintiffs*