UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ACANTHA LLC,

        Plaintiff,

    v.                                         Case No.    15-C-1257

DEPUY ORTHOPAEDICS INC., et al.,

        Defendants.

## DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT LIMITING DAMAGES BASED ON FAILURE TO MARK PURSUANT TO 35 U.S.C. § 287(A)

In this action for patent infringement, Plaintiff Acantha LLC accuses Defendants DePuy Synthes Sales, Inc., DePuy Synthes Products Inc., DePuy Synthes Inc., Johnson & Johnson Inc., Synthes Inc., Synthes USA LLC, DePuy Orthopaedics Inc., and DePuy Spine LLC of infringing its patent, U.S. Reissued Patent No. RE43,008 (the '008 Patent). In particular, Acantha asserts Defendants' Vectra and Zero-P VA products infringe on the '008 Patent. Presently before the court is Defendants' motion for partial summary judgment limiting damages based on Plaintiff's failure to mark pursuant to 35 U.S.C. § 287(a). For the following reasons, the motion will be granted.

## BACKGROUND

The patent-in-suit initially issued as U.S. Patent No. 6,261,291 (the '291 Patent) on July 17, 2001 but was later reissued as U.S. Patent No. RE43,008. In March 2002, David Talaber, one of the patent's inventors, sent letters to several medical device companies, including several defendant entities and their predecessors, notifying them of Acantha's intellectual property as well as the types of products it covered and inquiring into their interest in licensing the technology. Pl.'s Proposed

Findings of Fact (PPFOF) ¶ 28, ECF No. 176. In subsequent discussions with product development personnel at Synthes Spine and DePuy Orthopaedics that lasted through May 2002, Talaber expressed Acantha's interest in licensing the patent. Nisra Thongpreda and Kelly Baker as well as Dr. Jorge Ochoa participated in these meetings on behalf of Synthes Spine and DePuy Spine, respectively. *Id.* ¶ 30. Both entities did not plan to use the invention at that time. *Id.* Thongpreda subsequently attended a meeting to brainstorm a new "rotational" plate system with Synthes' anterior cervical spine team in May 2002. This system later became Defendants' Vectra product and was submitted for patent clearance in December 2002. *Id.* ¶¶ 31–32.

In 2003, Acantha entered into an exclusive license agreement for the '291 Patent, including any reissue of that patent, with Stryker Spine SA. Pursuant to the agreement, Acantha allowed Stryker to manufacture and sell products under the patent. The agreement only identified Stryker's Reflex product as a licensed product. Stryker agreed to mark the covered product's packaging: "Beginning . . . after the execution of this Agreement and at all times thereafter, the Licensed parties shall place, in a conspicuous location on the packaging for the Products . . . the words 'U.S. Patent No(s).' followed by the number(s) corresponding to the relevant U.S. Letter(s) Patent, subject to the reasonable approval of Licensor." *Id.* ¶ 37.

David Talaber and Dr. James Lloyd, the inventors of the patent, held numerous meetings with DePuy Spine personnel in 2006, to discuss the patent, how a license could benefit DePuy's spinal products, and the reissue proceedings for the patent. During one of the meetings, a DePuy executive noted that DePuy believed the Vectra product manufactured by Synthes infringed Acantha's intellectual property. Dr. Lloyd confirmed that Acantha was aware of that product. *Id.* ¶ 34. At this time, DePuy Spine was a division of Johnson & Johnson but had not yet merged with Synthes.

2

*Id.* ¶ 33.  On April 26, 2011, Johnson & Johnson and Synthes executed a merger agreement to combine DePuy and Synthes.  The merger was finalized on June 14, 2012.  *Id.* ¶ 35.

In 2013, Acantha and Stryker amended the license agreement so that Stryker had a non-exclusive license, rather than an exclusive license, for the patent.  The parties reaffirmed Stryker's obligation to mark the products that were subject to the agreement.  *Id.* ¶ 47.  This agreement not only identified Reflex as a licensed product but also listed several other products as licensed products, including the Reflex Hybrid, the Reflex Zero-Profile, and the Dynatran.  On March 19, 2014, Olivia Luk, an attorney representing Acantha, wrote to attorneys for Defendants and provided representative claim charts asserting that Defendants' Vectra and Zero-P VA products were covered by the claims of the '008 Patent.  Defs.' Proposed Findings of Fact (DPFOF) ¶ 25, ECF No. 157.

In their motion for partial summary judgment, Defendants argue that Acantha is limited to recovering damages as of March 19, 2014, the date Defendants received claim charts asserting their products violated Acantha's patent.  Defendants assert that they did not receive "actual notice" of infringement until that date and that they did not receive "constructive notice" of infringement because Acantha and Stryker did not mark the patented products or their packaging labels in accordance with 35 U.S.C. § 287(a).  In response, Acantha maintains that it expected Stryker, a sophisticated company experienced in licensing, to comply with this provision.  PPFOF ¶ 38.  Acantha states that one or more Acantha members met with Stryker representatives in person regularly and had telephone conversations with them occasionally about Stryker's marking obligations.  Stryker confirmed multiple times that it complied with the agreement's marking provisions.  *Id.* ¶ 40.  As early as 2004, Stryker listed Acantha's patent number on the surgical technique guides for the licensed Reflex products.  *Id.* ¶ 42.  These technique guides, Acantha notes,

are distributed to hospitals and at trade shows and are published on Stryker's website. Surgeons view and use the technique guides during the surgeries in which the device is used. *Id.* ¶ 43. Acantha states it reviewed the technique guides, noted the guides contained the Acantha patent number, and confirmed Stryker's oral representations that the licensed products were being marked. *Id.* ¶ 46.

In addition, Acantha states that the Reflex Zero-Profile, the Reflex Hybrid, and the Dynatran were updated with marking on their packaging at least as of July 31, 2013. *Id.* ¶ 50. Defendants acknowledge that the label change was approved on July 31, 2013 but contend there is no evidence that all packaging on the products being sold was updated at that time. Defendants also argue that the Aviator, which was released in 2010, and the Anchor-C, which was released in 2011, were covered products that Stryker had an obligation to mark but failed to do so. Acantha denies that these products were covered by the patent and, therefore denies that Stryker was never required to mark them.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails

to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

**ANALYSIS**

Defendants argue that Acantha and its licensee, Stryker, failed to mark substantially all of the products covered by the '008 Patent or their packaging with the patent number in accordance with 35 U.S.C. § 287(a). The marking statute provides:

> Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them, or importing any patented article into the United States, may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent, or by fixing thereon the word "patent" or the abbreviation "pat." together with an address of a posting on the Internet, accessible to the public without charge for accessing the address, that associates the patented article with the number of the patent, or when, from the character of the article, this can not be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice. In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.

35 U.S.C. § 287(a).

Simply put, § 287(a) limits the amount of damages the patentee can recover to "those acts of infringement that occurred after the patentee gave the alleged infringer 'notice of infringement.'" *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1345 (Fed. Cir. 2001) (quoting 35 U.S.C. § 287(a)). Section 287 allows a patentee to provide either constructive notice, by appropriately marking the article with the patent number, or actual notice. *Id.* The marking statute serves three purposes (1) it helps to avoid innocent infringement; (2) it encourages patentees to give notice to the public that the article

is patented; and (3) it aids the public in identifying whether an article is patented. *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1443 (Fed. Cir. 1998) (citations omitted). "Compliance with section 287(a) is a question of fact." *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996). The patentee bears the burden of proving that it complied with either the marking requirement or the specific notice requirement of § 287. *See Dunlap v. Schofield*, 152 U.S. 244, 248 (1894) ("The duty of alleging, and the burden of proving, either [actual notice or constructive notice] is upon the [patentee].").

Section 287(a) not only applies to the patentee but also to the licensee, or "persons making or selling any patented article for or under [the patentees]." 35 U.S.C. § 287(a); *see Amsted Indus. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 185 (Fed. Cir. 1994) ("A licensee who makes or sells a patented article does so 'for or under' the patentee, thereby limiting the patentee's damage recovery when the patented article is not marked."). Because the patentee "bears responsibility to ensure that 'licensees . . . and other authorized parties . . . comply' with Section 287(a)," a licencee's failure to mark the article bears consequences for the patentee seeking damages for infringement. *Tulip Computers Int'l B.V. v. Dell Computer Corp.*, 262 F. Supp. 2d 358, 362 (D. Del. 2003) (quoting *Maxwell*, 86 F.3d at 1111–12). The Federal Circuit applies a "rule of reason" approach in cases where the failure to mark is caused by a third party unrelated to the patentee. Under this method, the court may consider "whether the patentee made reasonable efforts to ensure compliance with the marking requirements." *Maxwell*, 86 F.3d at 1111–12.

Defendants assert that Acantha has not satisfied its duty to mark under § 287(a) because Stryker did not mark the products or packaging of the Reflex, Reflex Hybrid, Reflex Zero-Profile, Dynatran, Aviation, and Anchor-C products. Setting aside the parties' dispute as to whether the

Aviation and Anchor-C products are covered products under the license agreement, in 2009, 93% of the undisputed licensed product Stryker sold was unmarked; in 2010, 95% of the licensed product was unmarked; in 2011, 94% of the licensed product was unmarked; in 2012, 95% of the licensed product was unmarked; and in 2013, 95% of the licensed product was unmarked. Even though Stryker did not mark the licensed products or their packaging with Acantha's patent number, Acantha contends that the fact that Stryker listed the patent number in the surgical technique guides for these products as early as 2004 satisfies § 287(a)'s marking requirements. These guides are distributed to hospitals and at trade shows and are published on Striker's website. Surgeons view and use the guides during the surgeries in which the device is used. Acantha argues that because patentees are entitled to "great discretion" when deciding how to mark their products, the jury should determine whether Stryker's marking satisfied § 287. Pl.'s Mem. in Opp'n at 24, ECF No. 175.

Indeed, § 287(a) is generally "construed to allow some discretion in the patentee to alternatively mark its product (by marking the product's packaging, for example), particularly when the product in question is small." *Bowling v. Hasbro, Inc.*, 490 F. Supp. 2d 262, 276 (D.R.I. 2007); *see also Rutherford v. Trim–Tex, Inc.*, 803 F. Supp. 158, 161 (N.D. Ill. 1992) (noting the Supreme Court's "long-standing focus on the notice effected by the method of marking the patented article rather than on the precise mechanistic compliance with the statute"). While some courts have found that placing the patent mark in the literature describing the patented article constitutes constructive notice, they have done so only when the literature is distributed with the product or placed in the box the product is contained. *See, e.g., Stryker Corp. v. Intermedics Orthopedics, Inc.*, 891 F. Supp. 751, 829, 930 (E.D.N.Y. 1995) ("disagree[ing] with the plaintiff's contention that by distributing literature containing the patent mark it met the statute's marking requirement" because there was no

evidence that the literature "was placed *in the packaging* of the Omniflex that was distributed to vendors and end-users"), *aff'd*, 96 F.3d 1409 (Fed. Cir. 1996); *Calmar, Inc. v. Emson Research, Inc.*, 850 F. Supp. 861, 868 (C.D. Cal. 1994) (observing that § 287(a) may be satisfied by "including something with the packages in which the patented articles are shipped which would indicate the article's patent number"); *McAfee Enters., Inc. v. Ashley Entm't Corp.*, No. 16-cv-2618, 2016 WL 4063169, (N.D. Ill. July 29, 2016) ("The Court cannot say based on the current factual record that a jury could not reasonably conclude that marking the product and box with the word 'PATENTED' and enclosing inside the packaging an instruction manual that provides the patent number fails to satisfy the notice requirement of the marking statute."); *Rexnord, Inc. v. Laitram Corp.*, No. 85-C-1039, 1988 WL 141526, at *41 (E.D. Wis. Jan. 28, 1988) (finding that patentee complied with the marking statute where the products were "marked, where installation instructions bearing the patent notices were shipped in each box, and where Rexnord was expressly advised and appreciated that the products were patented"). Because Acantha has not established that the surgical technique guides were distributed or shipped with the licensed products, it cannot rely on the fact that these guides contain its patent number to show that it complied with the requirements of § 287(a).

Acantha asserts that it need not establish substantial compliance with § 287 because it made reasonable efforts to ensure that Stryker complied with the marking requirements. In particular, Acantha maintained consistent contact with Stryker about its obligation to mark its products in accordance with the license agreement, and Stryker confirmed multiple times that it complied with the marking provisions. Citing *Maxwell v. J. Baker Inc.*, 86 F.3d 1096 (Fed. Cir. 1996), Acantha contends these measures were sufficient to show that it exercised reasonable efforts to ensure Stryker's marking and complied with § 287(a).

But reasonable diligence, absent substantial compliance, is not enough. In *Maxwell*, the patent claimed a system for attaching a pair of matted shoes together. *Id.* at 1101. Maxwell entered into a license agreement with Target to manufacture shoes using the patented system, so that the shoes stayed connected and did not become mismatched and disorganized in the store. The alleged infringer, J. Baker, asserted Maxwell could not recover damages for infringement occurring before it had actual notice of the alleged infringement because Maxwell had not complied with the marking requirements of § 287(a). J. Baker claimed Target failed to instruct its manufacturers to mark the patented system and, as a result, at least 5% of the shoes it sold were not properly marked. *Id.* at 1111. Applying the rule of reason, the Federal Circuit concluded the evidence was sufficient to support the jury's finding that proper notice had been given, holding that "when third parties are involved, the number of shoes sold without proper marking is not conclusive of the issue whether the patentee's marking was 'substantially consistent and continuous.' When the failure to mark is caused by someone other than the patentee, the court may consider whether the patentee made reasonable efforts to ensure compliance with the marking requirements." *Id.* at 1111–12. In other words, where most of the shoes using the patented attachment system were properly marked and any deficiency was not due to lack of reasonable diligence on the part of the patentee, substantial compliance could be found. *Id.* at 1112. Reasonable diligence, by itself, is not enough. *See Maxwell v. K Mart Corp.*, 880 F.Supp. 1323, 1336 (D. Minn. 1995) ("Compliance with the marking statute cannot be measured by the reasonable efforts of a licensor alone as such efforts without substantial and continuous marking by the licensee provide no notice to the public. The world cannot be 'put on notice' if, despite the licensor's best efforts to ensure proper marking, the licensee continues to distribute unmarked articles.").

Although the Federal Circuit applied the rule of reason in *Maxwell v. J. Baker, Inc.*, it still recognized that marking "'must be substantially consistent and continuous in order for the party to avail itself of the constructive notice provisions of the statute.'" *Id.* at 1111 (quoting *Am. Med. Sys. Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1537 (Fed. Cir. 1993), *cert. denied*, 511 U.S. 1070 (1994)). It found that Maxwell complied with the marking statute, noting that the 95% marking rate Maxwell maintained through Target was sufficient to meet the "substantially all" standard. *Id.* But the marking rate in this case is a far cry from that found in *Maxwell*—Stryker marked at most 7% of the covered products annually from 2009 through 2013. Thus, even under the rule of reason, Acantha has not established that it complied with its duty to mark under § 287(a).

Finally, Acantha has not established that it sufficiently complied with § 287(a) after July 31, 2013, the date Stryker agreed to mark the Reflex Zero-Profile, the Reflex Hybrid, and the Dynatran packaging with Acantha's patent number. Even though the label change was approved on July 31, 2013, there is no evidence that all packaging on the products being sold was updated at that time. Acantha has cited no evidence from which a reasonable jury could infer that "substantially all" of the covered products were marked as of that date. *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996) (It is not the district court's "function to scour the record in search of evidence to defeat a motion for summary judgment; [a court relies] on the nonmoving party to identify with reasonable particularity the evidence upon which he relies."). Accordingly, Acantha has not satisfied the requirements of constructive notice through proper marking under § 287(a) as a matter of law from 2009 through 2013.

The inquiry does not end here, however. Even if a patentee fails to comply with § 287(a), it can still recover damages for sales made after the date it gave the alleged infringer actual notice of

infringement. "Informing the alleged infringer 'of the identity of the patent and the activity that is believed to be an infringement, accompanied by a proposal to abate the infringement, whether by license or otherwise' complies with the actual notice requirement of the marking statute." *Gart*, 254 F.3d at 1345 (quoting *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1470 (Fed. Cir. 1997)). "The correct approach to determining notice . . . must focus on the action of the patentee, not the knowledge or understanding of the infringer." *Amsted Indus.*, 24 F.3d at 187.

Acantha argues Defendants had actual notice of infringement since at least 2002 when it sent letters to several of the defendants and their predecessors notifying them of Acantha's intellectual property as well as the types of products it covered and inquiring into their interest in licensing the technology. But this letter does not constitute actual notice of infringement, which requires "affirmative communication of a specific charge of infringement by a specific accused product or device." *Id.* "Under this standard, general letters referring to the patent and including an admonishment not to infringe do not constitute actual notice." *Minks v. Polaris Indus., Inc.*, 546 F.3d 1364, 1376 (Fed. Cir. 2008) (citing *Amsted Indus.*, 24 F.3d at 187). Because Acantha's letters do not contain a specific charge of infringement or identify an infringing product, they do not satisfy the actual notice requirements.

Similarly, the 2002 and 2006 meetings between the inventors of the patent and representatives from some of the defendant entities to discuss licensing did not include any reference to a specific charge of infringement made by Acantha to the alleged infringer. Acantha has not shown that these meetings were anything more than licensing meetings. *See Soverain Software LLC v. Amazon.com, Inc.*, 383 F. Supp. 2d 904, 911 (E.D. Tex. 2005) ("[A] meeting regarding a licensing agreement does not raise an issue as to whether a patentee gave actual notice of alleged infringement."). Acantha

asserts Defendants had notice of infringement at the 2006 meeting because a DePuy executive stated he believed Synthes' Vectra product infringed Acantha's intellectual property, and DePuy would therefore know that the Zero-P VA product, which is essentially the same concept as the Vectra, infringed on the '008 Patent. Although Synthes eventually merged with Johnson & Johnson, it was a separate entity at the time the DePuy executive made this assertion. Again, a court "must focus on the action of the patentee, not the knowledge or understanding of the infringer." *Amsted Indus.*, 24 F.3d at 187. Acantha has presented no evidence that it sent affirmative communication to Synthes in 2006 making a specific charge of infringement by the Vectra product. In fact, Acantha did not provide actual notice of infringement of the '008 Patent until March 19, 2014, when an attorney representing Acantha wrote to attorneys for Defendants and provided representative claim charts asserting that Defendants' Vectra and Zero-P VA products were covered by the claims of the '008 Patent. In sum, Defendants did not receive actual notice of infringement of the '008 Patent before this date. The court therefore grants Defendants' motion for partial summary judgment limiting damages. In accordance with § 287(a), Acantha can only recover damages for infringement from March 19, 2014.

## CONCLUSION

For the foregoing reasons, Defendants' motion for partial summary judgment limiting damages pursuant to 35 U.S.C. § 287(a) (ECF No. 155) is **GRANTED**.

**SO ORDERED** this __25th__ day of April, 2018.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court

12